Whitaker, Judge,
concurring in part and dissenting in part:
This is a fraud case the like of which I have never before encountered. Unlike any other one, my sympathies are with those whose agents perpetrated the fraud, and yet I do not think they are legally entitled to what the majority proposes to give them.
The officers and agents of the plaintiif on the managerial level took no part in the commission of the fraudulent acts. They did not induce them; they had no knowledge that they would be committed. As soon as they learned of them, they sought to purge the company of the fraud to the full satisfaction of the Government. They have reimbursed the Government for all that it has suffered on account of the fraud, and stand ready to comply with all else the Government requires of them.
In an effort to secure permission for a resumption of production imder the contract, they had a number of conferences with the Contracting Officer, the person who had been authorized to represent the Government in the carrying out of the contract. The Contracting Officer outlined certain conditions which he thought it woidd be necessary for the plaintiff to fulfill as a condition of the grant of permission to continue with the contract. He, however, informed the plaintiff that in fraud matters it would be necessary for him to get the concurrence of “Washington” before he could make any binding commitment, but he did not designate the official in Washington whose concurrence would be necessary.
After the Contracting Officer and a representative of the Chief of Ordnance in Washington had informally agreed over the phone on the conditions with which it would be necessary for the plaintiff to comply, the Chief of the In *685 dustrial Division, acting for the Chief of Ordnance, wrote the Contracting Offiqer confirming the prior telephonic conversation and stating that the contract might be continued upon the fulfillment of conditions which he set out. Thereafter, after the Contracting Officer, in a further conference with plaintiff’s representative, a Mr. Hughes, had told him of the contents of the letter from the Office of the Chief of Ordnance, he was informed by Mr. Hughes that the plaintiff was prepared to meet all of those conditions.
Nothing was said in this conference about the necessity of securing the concurrence of the Assistant Secretary of the Army.
Now I understand that Judge Davis’ dissent is based upon a requirement of the regulations that the settlement of any fraud case must be approved by the Secretary or the Assistant Secretary for Materiel, that the plaintiff was charged with knowledge of this, and since the Assistant Secretary refused to approve it, it was not binding. There is no doubt about the fact that anyone who deals with a Government agent must, at his peril, ascertain the authority of that agent. This is an exception to the rule that a person is entitled to rely upon the apparent authority of the agent. That rule was grounded on right and justice. It is not applied to Government agents because of the necessity of protecting the people from their unauthorized acts, but whenever the Government is exempted from the apparent authority rule, someone suffers. I shrink from applying it here. The Contracting Officer was authorized by the Government to represent it in the performance of this contract; the Government had unequivocally held out to the plaintiff that he had such authority. The plaintiff had no reason to suspect that he lacked authority in the circumstances of this case except for the statement of the Contracting Officer that he could not make any binding commitment without the concurrence of “Washington.” But, when the Contracting Officer came back to the plaintiff and informed it that he had communicated with “Washington” and that “Washington” had stated that the plaintiff would be permitted to continue with the contract upon compliance with the conditions which he set out in his letter, the plaintiff would seem to have been en *686 titled to rely upon this representation of the Government’s representative charged with the duty of supervising the performance of this contract. It would seem that if the concurrence of any other official in Washington was necessary, the Government’s representative in charge of the performance of the contract was under the duty to so inform the plaintiff, and he did not do so.
Now it is true that the regulations provided that the concurrence of the Assistant Secretary was required but I am loathe to believe that the plaintiff was duty bound to pore through the voluminous Army regulations to verify the Contracting Officer’s implied assurance that he had secured the concurrence of those whose concurrence was necessary. I think the Government’s representative misled the plaintiff. He, no doubt innocently, beguiled plaintiff into believing all had been done that needed to be done; he lulled it to sleep; he never questioned the sufficiency of the concurrence of the Chief of Ordnance. In such case I shrink from making the customary exemption of the Government.
But for another reason I do not think plaintiff is entitled to what the majority proposes to give it. The majority opinion states that after the Contracting Officer had advised plaintiff’s representative of the conditions upon which it might resume production under the contract, “the two men then discussed the sort of letter that might appropriately be sent to Affiliated by Army Ordnance for the purpose of authorizing resumption of production under contract 506.” The money expended by plaintiff, for which the majority proposes to reimburse it, was spent before receipt of this letter. No such letter, in fact, was ever sent plaintiff. Therefore, whatever plaintiff did before receipt of that letter, it did so at its own risk and, since “Washington” decided not to send such a letter at all, plaintiff is not entitled to recover.
For these reasons, I must respectfully dissent.